1  SEYFARTH SHAW LLP
   Jonathan L. Brophy (SBN 245223)
2  Email: jbrophy@seyfarth.com
   Michelle Zakarian (SBN 327628)
3  Email: mzakarian@seyfarth.com
   2029 Century Park East, Suite 3500
4  Los Angeles, California 90067-3021
   Telephone:   (310) 277-7200
5  Facsimile:    (310) 201-5219

6  Attorneys for Defendants
   TJX COMPANIES, INC.,
7  MARSHALLS OF CA, LLC, and
   MUHAMMAD TALUKDER
8

9

10                    UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13  DELFINA ALGER, an individual,,          Case No. 8:21-cv-1250

14                 Plaintiff,               **DEFENDANTS' NOTICE OF
                                            REMOVAL OF CIVIL ACTION TO
15         v.                               UNITED STATES DISTRICT
                                            COURT**
16  THE TJX COMPANIES, INC., a
    Massachusetts corporation dba Marshalls [*Filed Concurrently With Declaration Of
17  [fictitiously named as DOE 1];          Joan Meltzer In Support*; *Declaration Of
    MARSHALLS OF CA, LLC, a Virginia        W. Alex Koch In Support*; *Declaration Of
18  limited liability company; MUHAMMAD     Jonathan L. Brophy In Support*;
    TALUKDER, an individual [fictitiously   *Corporate Disclosure Statement*; *Notice
19  named as DOE 2]; and DOES 3-50,         Of Interested Parties*; *Civil Cover Sheet*;
                                            *and Proof of Service*]
20                 Defendants.
                                            [Removed from Orange County Superior
21                                          Court, Case No. 30-2021-01201447-CU-
                                            OE-CJC]
22
                                            Date Action Filed:   May 14, 2021
23                                          FAC Filed:           June 4, 2021
                                            Trial Date:          None Set
24

25

26

27

28

72502426v.5

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF DELFINA ALGER AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Marshalls of CA, LLC, The TJX Companies, Inc., and Muhammad Talukder (collectively, "Defendants") hereby file this notice of removal pursuant to 28 U.S.C. sections 1332, and 1441(a) and (b), based on diversity of citizenship jurisdiction, in order to remove the above-captioned action from the Superior Court for the County of Orange to the United States District Court for the Central District of California, and state that the removal is proper for the following reasons:

**I.    BACKGROUND**

1.      On May 14, 2021, Plaintiff Delfina Alger, ("Plaintiff") filed a Complaint in the Superior Court of California for the County of Orange, entitled "*DELFINA ALGER, an individual Plaintiff, vs. THE TJX COMPANIES, INC., dba Marshalls, a Massachusetts limited liability company; MARSHALLS OF CA, LLC, a Virginia limited liability company; AND DOES 1-50, Defendants,*" Case No. 30-2021-01201447-CU-OE-CJC ("Complaint"). A true and correct copy of the Complaint is attached hereto as **Exhibit A.**

2.      In the Complaint, Plaintiff asserts four causes of action against Defendants The TJX Companies, Inc. ("TJX") and Defendant Marshalls of CA, LLC ("Marshalls") for: (1) "Gender Discrimination (FEHA)"; (2) "Failure to Take all Reasonable Steps to Prevent Discrimination"; (3) "Retaliation [*Gov't Code* 12940(h)]"; and (4) "Retaliation [*Labor Code* §1102.5]."

3.      Defendants were never served with Plaintiff's May 14, 2021, Complaint.

4.      On June 4, 2021, Plaintiff filed a First Amended Complaint ("FAC"). The First Amended Complaint added an individual Defendant, Muhammad Talukder ("Talukder"), and asserts five causes of action against Defendants Talukder, TJX and Marshalls for: (1) "Gender Discrimination (FEHA)"; (2) "Gender Harassment (FEHA)";

DEFENDANTS' NOTICE OF REMOVAL

72502426v.5

(3)"Failure to Take all Reasonable Steps to Prevent Discrimination"; (4) "Retaliation [*Gov't Code* 12940(h)]"; and (5) "Retaliation [*Labor Code* §1102.5]."

5.    On June 24, 2021, Marshalls' registered agent for service of process in Virginia received, via process server, the Summons, First Amended Complaint, Civil Case Cover Sheet, Plaintiff's Peremptory Challenge and Declaration In Support Of Motion Re Disqualification of Judge (C.C.P. 170.6), and  Alternate Dispute Resolution Information Package. A true and correct copy of the packet received by Marshalls, including the FAC, is attached hereto as **Exhibit B.**

6.    TJX has not been served, but consents to the filing of this Notice of Removal.

7.    Plaintiff has not yet served Talukder.

8.    On July 22, 2021, Defendants timely filed their Answer to Plaintiff's First Amended Complaint in Orange County Superior Court.  A true and correct copy of Defendants' Answer to Plaintiff's FAC is attached hereto as **Exhibit C**.

9.    Defendants have not filed or received any other pleadings or papers, other than the pleadings described as **Exhibits A** through **C**, in this action prior to this Notice of Removal.  (Declaration of Jonathan L. Brophy ("Brophy Decl."), ¶ 2.)

10.    As discussed in greater detail below, TJX is a citizen of Delaware and Massachusetts and Marshalls is also a citizen of Delaware and Massachusetts.  Plaintiff also names Talukder as a Defendant, but Talukder is a "sham" defendant, such that for purposes of diversity of citizenship jurisdiction, he can be disregarded.

11.    All Defendants –TJX, Marshalls and Talukder – consent to this removal.

## II.    TIMELINESS OF REMOVAL

12.    The time for filing a Notice of Removal does not begin to run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become

removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"); *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir., Feb. 1, 2018) ("We have also emphasized that 'a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability.' *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693-94 (9th Cir. 2005)). Accordingly, 'even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document.'").

13. The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

14. This Notice of Removal is timely, as it is filed within thirty (30) days of service of service of the Summons and FAC on June 24, 2021. 28 U.S.C. § 1446(b); Cal. Civ. Proc. Code § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery").

15. Written notice of the filing of this Notice of Removal is being delivered to Plaintiff through her counsel of record. A copy of the Notice of Removal will be filed with the Clerk of the Superior Court of the State of California for the County of Orange.

## III. JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

16. The Court has original jurisdiction of this action under 28 U.S.C. section 1332(a)(1). As set forth below, this action is removable pursuant to the provisions of 28 U.S.C. section 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

72502426v.5

### A. Plaintiff Is A Citizen Of California

17.    For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the place he or she resides with the intent to remain indefinitely.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Residence is prima facie evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (holding that "the place of residence is prima facie [evidence of] domicile").

18.    Plaintiff is and, at all times since the commencement of this action has been, a resident and citizen of the State of California.  The Complaint alleges that, "Plaintiff is a current employee of Defendants and is a resident and citizen of the State of California."  (*See* **Ex. B**, FAC, ¶ 2.)

19.    In addition, Defendants' review of Plaintiff's personnel file and public records reveals that Plaintiff resides in California.  (*See* Brophy Decl., ¶3, Ex. D; Declaration of W. Alex Koch ("Koch Decl."), ¶ 5.) Furthermore, the First Amended Complaint alleges Plaintiff works in California. (*See* **Ex. B**, FAC, ¶2-3).

20.    Plaintiff, therefore, is, and at all times since the commencement of this action has been, a resident and citizen of the State of California.

### B. Defendant The TJX Companies, Inc. Is Not A Citizen of California

21.    TJX is now, and was at the time of the filing of this action, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1).  For diversity purposes, "a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'"  *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. 1332(c)(1)).

22.    The United States Supreme Court in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010), held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

DEFENDANTS' NOTICE OF REMOVAL

72502426v.5

We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." **And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center"** . . . *The Hertz Corp.*, 130 S. Ct. at 1192 (emphasis added).

23.     TJX is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware. (Declaration of Joan Meltzer ("Meltzer Decl."), ¶ 5.) Further, as shown below, TJX's principal place of business is, and has been at all times since this action commenced, located in the State of Massachusetts. (*Id.* at ¶ 6.)

24.     Pursuant to *Davis*, 557 F.3d at 1029 and *The Hertz Corp.*, 130 S. Ct. at 1192, TJX's principal place of business is Massachusetts because its "nerve center" is located in that state. TJX's corporate headquarters are located in Framingham, Massachusetts where TJX's high level officers direct, control, and coordinate its activities. (Meltzer Decl., ¶ 6.) TJX's high level corporate officers maintain offices in Framingham, Massachusetts, and many of TJX's corporate level functions are performed in the Framingham, Massachusetts offices. (*Id.*) Additionally, many of TJX's executive and administrative functions, including corporate finance and accounting, are directed from the Framingham, Massachusetts offices. (*Id.*)

25.     Therefore, for purposes of diversity of citizenship, TJX is, and has been at all times since this action commenced, a citizen of the State of Delaware and Massachusetts and diversity exists between Plaintiff and TJX. 28 U.S.C. 1332(c)(1).

## C.     Defendant Marshalls of CA, LLC, Is Not A Citizen Of California

26.     Marshalls is now and, at all times since the commencement of this action has been, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1). *See Davis*, 557 F.3d at 1028 (citing 28 U.S.C. 1332(c)(1)); *The Hertz Corp.*, 559 U.S. at 92-93.

6

72502426v.5

27.    "A [ ] partnership or a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. § 1332(c)(1)).

28.    Moreover, unincorporated associations such as limited liability companies and partnerships are also treated as "a citizen of every state of which its owners/members are citizens." *Johnson*, 437 F.3d at 899; *see also Grupo Dataflux v. Atlas Global Grp., LP*, 541 US 567, 569 (2004) (same); *Carden v. Arkoma Assocs.*, 494 US 185, 195, 110 S.Ct. 1015, 1021 (1990) (same).

29.    In this case, Marshalls is now, and ever since this action commenced has been, a limited liability company, organized under the laws of the State of Virginia. (Meltzer Decl., ¶ 7.) Marshalls' principal place of business is in Massachusetts because it is where its headquarters is located and where its high level officers direct, control and coordinate its activities. (*Id.* at ¶ 8.) Additionally, the majority of Marshalls' executive and administrative functions are performed in or directed from the Framingham, Massachusetts office, including corporate finance, accounting, purchasing, marketing and information systems. (*Id.*)

30.    Even if this Court were to consider the citizenship of Marshalls' members, it is still not a citizen of California because, as discussed below, **none** of its members and sub-members—(1) NBC Operating, LP, and (2) NBC Trust—are a citizen of the State of California. Thus, there is diversity between Plaintiff and Marshalls.

### 1.    NBC Operating, LP, Is Not A Citizen Of California

31.    At all times since Plaintiff commenced this lawsuit, Marshalls' sole member has been NBC Operating, LP, and it owns 100% of Marshalls. (Meltzer Decl. ¶ 9.)

32.    NBC Operating, LP, is a limited partnership that at all relevant times during this litigation was organized under the laws of the State of Delaware with its principal place of business in Massachusetts. (*Id.* at ¶ 10-11.) NBC Operating, LP's

7

principal place of business is in Massachusetts because it is where its headquarters is located and where its high level officers direct, control and coordinate its activities.  (*Id.* at ¶ 11.)  Additionally, the majority of NBC Operating, LP's executive and administrative functions are performed in or directed from the Massachusetts office, including corporate finance, accounting, purchasing, marketing and information systems. (Meltzer Decl. ¶ 11.)

33.   Because NBC Operating, LP, is a partnership, the Court may also examine the citizenship of its members—NBC GP, LLC and NBC Trust—for purposes of establishing diversity jurisdiction.  *See V & M Star, LP v. Centimark Corp*., 596 F.3d 354, 357 (6th Cir. 2010) (When a member of a limited liability company is itself a partnership or association, "the federal court needs to know the citizenship of each 'sub-member' as well.").

34.   At all times since Plaintiff commenced this lawsuit, NBC Operating, LP's general partner has been NBC GP, LLC, a Delaware limited liability company, and its limited partner has been NBC Trust.  (Meltzer Decl. ¶ 12.) NBC Trust owns 100% of NBC Operating, LP.  (*Id.*)

## 2.   NBC GP, LLC Is Not a Citizen Of California

35.   NBC GP, LLC is a limited liability company that at all relevant times during this litigation was organized and existing under the laws of the State of Delaware. (Meltzer Decl. ¶ 13.)

36.   NBC GP, LLC's headquarters is located in Framingham, Massachusetts where its high level officers direct, control and coordinate its activities.  (*Id.* at ¶ 14.) Additionally, the majority of NBC GP, LLC's executive and administrative functions are performed in or directed from the Framingham, Massachusetts offices, including corporate finance, accounting, purchasing, marketing and information systems.  (*Id.*)

37.   At all times since Plaintiff commenced this lawsuit, NBC GP, LLC's sole member has been NBC Trust, and it owns 100% of NBC GP, LLC. (*Id.* at 15.)

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3.   NBC Trust Is Not A Citizen Of California

38.    At all times since Plaintiff commenced this lawsuit, NBC Operating, LP's limited partner has been NBC Trust, and it owns 100% of NBC Operating, LP. (Meltzer Decl. ¶ 12.)

39.    NBC Trust is a citizen for the State of Massachusetts because it is organized under the laws of the State of Massachusetts. (Meltzer Decl. ¶ 16.) NBC Trust's headquarters is located in Framingham, Massachusetts, where its high level officers direct, control, and coordinate its activities.  Additionally, the majority of NBC Trust's executive and administrative functions are performed in or directed from the Framingham, Massachusetts offices, including corporate finance, accounting, purchasing, marketing and information systems.  (*Id.* at 17.)

### D.   Defendant Talukder's Citizenship Should Be Disregarded Because He Is A Sham Defendant

40.    Defendant Talukder must be disregarded for purposes of diversity because he is a sham defendant; that is, he cannot be found liable as a matter of law. *See, e.g., Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (holding that removal based on diversity of citizenship was proper and that district court "correctly ignored" joinder of a resident defendant after it was shown that plaintiff "could not possible prevail" on her claim against the resident defendant); *Dodson v. Spillada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (finding fraudulent joinder of non-diverse defendants where there was "no possibility that [plaintiff] would be able to establish a cause of action against them").

41.    Talukder is a sham defendant because he has been fraudulently named.  *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("[F]raudulently joined defendants will not defeat removal on diversity grounds."), *cert. denied*, 525 U.S. 963 (1998); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is

fraudulent."); *Lewis v. Time, Inc.*, 83 F.R.D. 455, 460 (E.D. CAL. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) (a sham defendant is to be ignored for purposes of removal).

42. Joinder of a defendant is fraudulent if the defendant cannot be liable to the plaintiff on any theory alleged in the complaint. *Ritchey*, 139 F.3d at 1318 ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.") (quoting *McCabe*, 811 F.2d at 1339)).

43. When determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Lewis*, 83 F.R.D. at 455 ("[I]t is well settled that upon allegations of fraudulent joinder . . . federal courts may look beyond the pleadings to determine if the joinder . . . is a sham of fraudulent device to prevent removal."); *McCabe*, 811 F.2d at 1339 (a defendant "is entitled to present the facts showing the joinder to be fraudulent").

44. Plaintiff has fraudulently named Talukder – an individual supervisor – as a defendant as to all causes of action: (1) "Gender Discrimination (FEHA)"; (2) "Gender Harassment (FEHA)"; (3)"Failure to Take all Reasonable Steps to Prevent Discrimination"; (4) "Retaliation [*Gov't Code* 12940(h)]"; (5) "Retaliation [*Labor Code* §1102.5]."

45. The claims against Talukder are not viable as a matter of law for the following reasons: (1) Talukder cannot be held personally liable for Plaintiff's non-harassment claims as a matter of law; (2) the managerial privilege precludes personal liability on Plaintiff's non-harassment claims; and (3) the harassment claim fails because Plaintiff cannot establish that the conduct was severe or pervasive.

/ / /

/ / /

/ / /

/ / /

DEFENDANTS' NOTICE OF REMOVAL

72502426v.5

**1.    Talukder Is A Sham Defendant Because He Cannot Be Held Personally Liable For Plaintiff's Non-Harassment Claims As A Matter Of Law**

46.     Here, Plaintiff asserts all causes of action against every Defendant. Nevertheless, Plaintiff also cannot assert a claim against Talukder for the remainder of her non-harassment claims.

47.     <u>First, Third, and Fourth Causes of Action</u>: As a matter of law, there is no individual liability for Plaintiff's Gender Discrimination, Failure to Prevent Discrimination, and Retaliation in Violation of the FEHA claims because it is well-established that supervisors cannot be sued individually under FEHA.  *See Reno v. Baird,* 18 Cal. 4th at 643 (holding that "the FEHA, unlike similar federal statutes, allows person to sue and hold liable their employers, but not individuals").  *See also Schaffer v. GTE, Inc.*, 40 F. App'x 552, 557 (9th Cir. 2002) (affirming summary judgment on gender discrimination claim because "supervisors may not be sued individually under FEHA for alleged discriminatory acts" (citing *Reno*, 18 Cal. 4th 640)) and *Vernon v. State of California*, 116 Cal. 4th 114, 123 (2004) ("The FEHA predicates potential liability for discrimination on the status of the defendant as an 'employer'").  Because the law does not impose FEHA liability on individual supervisors, Plaintiff's claims against Talukder for Gender Discrimination, Failure to Prevent Discrimination, and Retaliation in Violation of the FEHA fail as a matter of law.

48.     <u>Fifth Cause of Action</u>: As a matter of law, Talukder cannot be held liable for her fifth cause of action for Retaliation in Violation of Labor Code § 1102.5.  *See Crone v. Tracy Unified Sch. Dist.*, No. 2:20-CV-01451-JAM-AC, 2020 WL 7182345 (E.D. Cal. Dec. 7, 2020) ("Because a claim under 1102.5 cannot be brought against an individual, Plaintiff's claim against defendant [] fails as a matter of law."); *see also United States v. CardioDx, Inc.*, No. 15-CV-01339-WHO, WL 2019 WL 2163002 (N.D. Cal. May 17, 2019) (finding no individual liability under Labor Code § 1102.5); *Bales v. Cty. of EL Dorado*, No. 2:18-CV-01714-JAM-DB, 2018 WL 4558235 (E.D. Cal.

11

72502426v.5

Sept. 20, 2018) (finding no individual liability for individual defendant under Labor Code § 1102.5).

49.     Accordingly, Talukder is a sham defendant because Plaintiff cannot assert the remainder of her claims against him.  Therefore, for purposes of diversity, Talukder's citizenship should be disregarded.

### 2. Talukder Is A Sham Defendant Because Plaintiff's Harassment Claim Is Based Solely On Personnel Decisions Which Are Precluded By The Managerial Privilege

50.     Because Plaintiff's claims for gender harassment are based solely on personnel decisions, Talukder, as a matter of law, cannot be liable.  As the California Supreme Court held in *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998), only employers are liable for the personnel management actions of their supervisors:

> By the inclusion of the "agent" language, the Legislature intended only to ensure that **employers** will be held liable if their supervisory employees take actions later found discriminatory, and that **employers** cannot avoid the liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.

*Id.*  Thus, the Court held that "it is 'inconceivable' that the Legislature simultaneously intended to subject individual non-employers to the burdens of litigating such claims. To so construe the statute would be 'incongruous' and 'would upset the balance' struck by the Legislature." *Id*. at 651 (citations omitted).  The Court then cautioned that "if every personnel manager risks losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel management decision, management of industrial enterprises and other economic organizations would be seriously affected." *Id*. at 652-653.  Moreover, the court in *Reno* defined harassment, and specifically excluded from that definition conduct which is part and parcel of a supervisory employee's job performance. *Id*. at 645-46.

51.     Under the doctrine of managerial privilege, individual managers cannot be held personally liable for tort claims brought by other employees arising from actions taken within the course and scope of their managerial capacity. *McCabe*, 811 F.2d at

1339 (applying California law, the court held that plaintiff's tort claims against two individual managers failed as a matter of law because "[the managers'] actions, according to the complaint, had been in their managerial capacity . . . [and] ratified by [their employer] . . . . [I]t is clear that 'if an agent is motivated in part by a desire to benefit his principle,' his conduct is, under California law, privileged.") (citation omitted).

52.     Here, Plaintiff's allegations demonstrate that Talukder's conduct cannot give rise to liability.  The sum total of allegations raised by Plaintiff against Talukder include:

a.    "ALGER felt discriminated against from her manager TALUKDER based on her gender. The way he supervised men and women was different. Women did not get promotions and were paid less. ALGER worked there a long time and continued to apply for a promotion but got passed over by other men. ALGER just wanted to be treated fairly but because she reported an illegal conduct, she was being retaliated against." (Ex. B**,** FAC, ¶ 10).

b.    "On October 2, 2020, Alger submitted a written complaint via email to Dorothy Welch, at 1:09pm: It stated: "I need to report how my manager, Mohammed [TALUKDER], is treating women. He supervises men and women but he treats women differently. He does not treat them with the same respect and speaks down to them. Women don't get the promotions the men do and they don't get the same pay. I have worked here a long time and have applied for promotions but get passed over. I think it is because I'm a woman. I love working for TJ Maxx but I want to be treated fairly and with the same respect that the men are shown. Please help me." (*Id.* at ¶ 11).

c.    "TALUKDER, the general manager, discriminated against ALGER on the basis of her gender and retaliated against her." (*Id.* at ¶ 7).

13

72502426v.5

53.     These instances involve personnel decisions whereby Talukder, a manager, needed to make promotional decisions.  Plaintiff's allegations make clear that the conduct that allegedly caused her harm occurred within the course and scope of her employment. Thus, Talukder's alleged actions are protected by the managerial privilege. Further, Plaintiff has only added one cause of action, gender harassment, to her First Amended Complaint. Yet there are no new facts pled that show how Talukder treated her differently on the basis of gender, beyond the allegations cited above at ¶¶ 10, 11 and 7.

### 3. Talukder Is A Sham Defendant Because The Lack Of Severe Or Pervasive Conduct Precludes Personal Liability On Her Workplace Harassment Claim

54.     The conduct attributed to Talukder by Plaintiff cannot support a claim for harassment.  None of the conduct alleged by Plaintiff is severe or pervasive enough, as a matter of law, to constitute unlawful harassment.

55.     Plaintiff must prove she was subjected to harassing conduct because of her gender that was sufficiently severe or pervasive so as to alter the conditions of her employment.  *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 608 (1989).  The gravamen of a harassment claim is that, to be actionable, the conduct at issue is so severe or pervasive as to create an abusive working environment.  *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986).  "In determining what constitutes 'sufficiently pervasive' harassment, the courts have held acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature."  *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 142 (2007).

56.     Talukder's conduct cannot be considered severe because there was no physical threat or harm.  *See Hughes v. Pair*, 46 Cal. 4th 1035, 1049 (2009) (summary judgment affirmed for the employer; "employment law acknowledges that an isolated incident of harassing conduct may qualify as 'severe' when it consists of a physical assault or threat thereof"); *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 284 (2006) (same).

57.   Further, Talukder's conduct cannot be considered severe or pervasive because even repeated instances of verbal abuse, profane language, and threats of job loss are insufficient.  *See e.g., Hughes,* 46 Cal. 4th at 1049 (summary judgment affirmed for the employer; a supervisory employee threatened plaintiff's job and plaintiff was told "I'll get you on your knees eventually. I'm going to fuck you one way or another;" "Most reasonably construed, defendant's comment was a threat … of financial retaliation").

58.   Plaintiff's cause of action is a textbook example of what harassment is **not**. The conduct Plaintiff claims to be "harassment" is too trivial to be actionable.  *See, e.g., Reno v. Baird,* 18 Cal. 4th 640, 646-47 (1998); *Hardin v. Wal-Mart Stores, Inc.,* No. CIV-F-08-0617 AWI, 2012 WL 691707 at * 18 (E.D. Cal., Mar. 2, 2012) ("Personnel management actions commonly necessary to carry out the duties of business and personnel management, and thus outside the purview of harassment, include 'hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions' and decisions regarding meetings.").

59.   Plaintiff's allegations of personnel management decisions, such as promoting other employees, hardly meets the necessary standard.  As such, what Plaintiff claims to be harassment falls short of being adequately "severe or pervasive."

### E.   Doe Defendants May Be Disregarded

60.   Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332.  *Fristoe v. Reynolds Metals, Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe defendants, 3-50, does not deprive this Court of jurisdiction.

DEFENDANTS' NOTICE OF REMOVAL

72502426v.5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    AMOUNT IN CONTROVERSY

61.    While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-04 (9th Cir. 1996) ("[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount.") (internal quotations and citations omitted).

62.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition). When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

63.    In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages, including attorneys' fees and punitive damages).

64.    Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees that might be awarded if Plaintiff prevails, establish by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

16

72502426v.5

### A. Plaintiff's FAC Establishes That The Amount In Controversy Is At Least $500,000

65.     When a defendant seeks removal on diversity grounds, "the sum demanded in good faith [by the plaintiff] in the initial pleading shall be deemed to be the amount in controversy."  28 U.S.C. § 1446(c)(2); *see Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 402 (9th Cir. 1996) ("[T]he sum claimed by the plaintiff controls," unless it appears "that the claim is really for less than the jurisdictional amount.") (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 288-89 (1938)).

66.     In Plaintiff's initial pleading, Plaintiff alleges that she has suffered "other consequential damages, including damages for shame, humiliation, mental anguish and emotional distress in the amount of at least $500,000.00 caused by the Defendant's conduct." (*See* Ex. B  FAC, ¶¶ 28(c), 41(c), 47(c), 54(c), 61(c)).

67.     Accordingly, Plaintiff's demand for an amount of damages of **no less than $500,000** should be deemed the amount in controversy, which satisfies and exceeds the jurisdictional threshold.

### B. Plaintiff's Claims Otherwise Exceed 75,000

68.     The amount in controversy requirement is satisfied because "it is more likely than not" that it exceeds the jurisdictional minimum based on the allegations in Plaintiff's Complaint.  *See Sanchez*, 102 F.3d at 404 ("the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount") (internal citation omitted).

69.      In the Complaint, Plaintiff alleges five causes of action against Defendants for: (1) "Gender Discrimination (FEHA)"; (2) "Gender Harassment (FEHA)"; (3)"Failure to Take all Reasonable Steps to Prevent Discrimination"; (4) "Retaliation [*Gov't Code* 12940(h)]"; (5) "Retaliation [*Labor Code* §1102.5]."

70.     Plaintiff claims general and special damages, including, but not limited to, interest, attorney's fees, penalties, costs, expenses, wages, monetary compensation for gender discrimination, punitive damages as the FEHA cause of action and emotional

DEFENDANTS' NOTICE OF REMOVAL

72502426v.5

damages.  (*See* Ex. B, FAC, ¶¶ 4, 28, 29, 30, 41, 42, 43, 44, 47, 48, 49, 54, 55, 56, 61; Prayer for Relief, at ¶¶ 1-6).

71.　Plaintiff is a current employee of Defendants, with an average rate of $17.49 per hour (annualized at about $36, 379.2). (*See* Ex. B, FAC, ¶¶ 2, 4; Koch Decl. ¶ 5.) Plaintiff specifically alleges her damages include "loss of salary and other valuable employment benefits. (*See id.*, ¶¶ 28(a), 41(a),  47(a), 54(a), 61(a)).

72.　Courts routinely find removal appropriate in employment discrimination and retaliation cases, even when the alleged lost wages do not exceed the jurisdictional amount at the time of removal, because of the possibility of substantial punitive damages, emotional distress and attorneys' fee awards.  *See*, *Melendez v. HMS Host Family Restaurants, Inc.*, No. CV 11-3842 ODW CWX, 2011 WL 3760058, at *2-3 (C.D. Cal. 2011) (removal appropriate where lost wages totaled $47,424);  *Vasquez v. Arvato Digital Servs., LLC*, No. CV 11-02836 RSWL, 2011 WL 2560261, at *3, 5 (C.D. Cal. 2011) (same when lost wages estimated to be $25,171 at time of removal); *Chambers v. Penske Truck Leasing Corp.*, No. 1:11-CV-00381 LJO, 2011 WL 1459155, at *3 (E.D. Cal. 2011) (same when lost wages estimated to be $10,470 at time of removal); *Simmons*, *supra*, 209 F. Supp. 2d at 1031-35 (same where lost wages totaled $25,600 at time of removal).

### C.　**Emotional Distress Damages**

73.　Plaintiff claims damages for emotional distress in the amount of $500,000. (*See* Ex. B, FAC, ¶¶ 28(c), 41(c), 47(c), 54(c), 61(c)). A review of jury verdicts in California demonstrates that emotional distress awards in discrimination cases commonly exceed $75,000.  *See Silverman v. Stuart F. Cooper Inc.*, 2013 WL 5820140 (Los Angeles Sup. Ct.) (jury awarded $157,001 for emotional distress damages in discrimination case); *Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*, 2013 WL 7852947 (Los Angeles Sup. Ct.) (award of $1,250,000 for pain and suffering to employee in discrimination action); *Aboulafia v. GACN Inc.*, 2013 WL 8115991 (Los Angeles Sup. Ct.) (pain and suffering award of $250,000, $250,000, $250,000, and

DEFENDANTS' NOTICE OF REMOVAL

$250,267 to four employees in discrimination action); *Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal) (jury award $5,600,000 in non-economic damages in discrimination and retaliation case); *Welch v. Ivy Hill Corp.*, 2011 WL 3293268 (Los Angeles Sup. Ct.) (award of $1,270,000 in pain and suffering to employee in a discrimination action); *Leimandt v. Mega RV Corp.*, 2011 WL 2912831 (Orange County Sup. Ct.) (jury awarded $385,000 in pain and suffering to employee in a discrimination case); *Peacock v. Quest Diagnostics*, 2010 WL 6806990 (C.D. Cal.) (jury award of $150,000 in non-economic loss to employee in action for discrimination action).

74.     Plaintiff's allegations of emotional distress are similar to the issues raised in these cases.  Defendants have attached these verdicts as **Exhibit E** to the concurrently filed Declaration of Jonathan L. Brophy for the Court's review.

## D.     <u>Attorney's Fees and Costs</u>

75.     Plaintiff claims that she is entitled to attorneys' fees and costs. . (*See* Ex. B, FAC, ¶¶  4, 29, 42, 48, 55, 61(d); Prayer for Relief, at  ¶4 ). Attorneys' fees are properly considered in calculating the amount in controversy for purposes of removal on grounds of diversity jurisdiction.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory).

76.     Courts have also awarded far in excess of $75,000.00 in attorneys' fees in cases involving employment-related claims.  *See, e.g., Crawford v. DIRECTV, Inc.*, 2010 WL 5383296 (Los Angeles County Sup. Ct.) (approving attorneys' fee award of $159,762.50); *Davis v. Robert Bosch Tool Corp.*, 2007 WL 2014301, *9 (Cal. Ct. App. 2d Dist. July 13, 2007) (individual plaintiff sought $1.6 million in fees); *Denenberg v. Cal. Dep't of Transp.*, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorneys' fees award of $490,000 for claims).  Defendants have attached these verdicts as **Exhibit F** to the concurrently filed Declaration of Jonathan L. Brophy for the Court's review.

77.   Defendants anticipate depositions being taken in this case, and that ultimately, Defendants will file a Motion for Summary Judgment.  Based on defense counsel's experience, attorneys' fees in employment discrimination and wrongful termination cases often exceed $75,000.  In this regard, it is more likely than not that the fees will exceed $75,000.00 through discovery and a summary judgment hearing, and the fees would certainly exceed $75,000.00 if the case proceeds to trial.  (Brophy Decl., ¶ 5.)

### E.   **Punitive Damages**

78.   Finally, the Court must also consider Plaintiff's request for punitive damages in determining the amount in controversy.  *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law). (*See* Ex. B, FAC, ¶¶ 4, 30, 43, 49, 56, Prayer for Relief, ¶ 5.)

79.   Courts have affirmed jury verdicts exceeding $1 million in punitive damages in alleged retaliation cases.  *See, e.g., Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009).

80.   Based upon the allegations contained in the Complaint, Defendants are informed and believe that Plaintiff seeks damages within the jurisdictional authority of this Court.

81.   Because diversity of citizenship exists between Plaintiff and Defendants, and the matter in controversy between the parties is in excess of $75,000.00, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1).

## V.   VENUE

82.   Venue lies in the Central District of California pursuant to 28 U.S.C. § 1441(a), 1446 (a), and 84(c).  This action originally was brought in the Superior Court of California, County of Orange, which is located within the Central District of the State of California.  (*See* Ex. A-B.)

20

DEFENDANTS' NOTICE OF REMOVAL

## VI.  NOTICE OF REMOVAL

83.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Orange.

84.     This Notice of Removal will be served on counsel for Plaintiff.  A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

85.     In compliance with 28 U.S.C. section 1446(a), true and correct copies of all process, pleadings, and orders filed and/or served in this action are attached as Exhibits A through C to this Notice of Removal.

## VII.  RESERVATION OF RIGHTS

86.     By filing this Notice of Removal, Defendants do not concede nor waive any defense to this action.

## VIII.  PRAYER FOR REMOVAL

87.     WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of Orange, to the United States District Court for the Central District of California.

DATED:  July 23, 2021                          Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Michelle Zakarian*

Jonathan L. Brophy
Michelle Zakarian
Attorneys for Defendants
The TJX Companies, Inc., Marshalls Of CA, LLC, and Muhammad Talukder

72502426v.5